*Asinga v. Gatorade Co.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of July, two thousand twenty-six.

PRESENT:  RAYMOND J. LOHIER, JR.
                       *Chief Judge,*
                  DENNIS JACOBS,
                  JOSÉ A. CABRANES,
                       *Circuit Judges.*

------------------------------------------------------------------

ISSAMADE ASINGA,

     *Plaintiff-Appellant,*

    v.                                          No. 25-1378

THE GATORADE COMPANY, A
DIVISION OF PEPSICO, INC.,

     *Defendant-Appellee.*

------------------------------------------------------------------

FOR PLAINTIFF-APPELLANT:     ALEXIS G. CHARDON, Garmey Law, Portland, ME

FOR DEFENDANT-APPELLEE:     JESSICA ELLSWORTH, Hogan Lovells US LLP, Washington, DC (Michael J. West, Washington, DC; Lauren S. Colton, Baltimore, MD; Benjamin A. Fleming, New York, NY, *on the brief*)

Appeal from a judgment of the United States District Court for the Southern District of New York (Cathy Seibel, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED** with respect to counts four, five, and six of Plaintiff-Appellant's complaint, and decision is **RESERVED** with respect to counts one, two, and three of Plaintiff-Appellant's complaint.[1]

Plaintiff-Appellant Issamade Asinga appeals from the District Court's judgment dismissing his complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The complaint asserted six causes of action: (1) strict

---

[1] In a separate opinion and certification to the New York Court of Appeals filed simultaneously with this summary order, we address and reserve decision as to Asinga's appeal of the District Court's dismissal of his first three counts, including strict products liability, negligence, and negligent misrepresentation.

products liability, (2) negligence, (3) negligent misrepresentation, (4) violation of Texas' Deceptive and Unfair Trade Practices Acts (Texas Business and Commercial Code § 17.46) ("TDTPA"), (5) tortious interference with contract, and (6) intentional infliction of emotional distress ("IIED"). We decide the issues relating to the last three claims (counts four through six of the complaint) in this summary order. With respect to the issues that are the subject of this summary order, we assume the parties' familiarity with the underlying facts and the record of prior proceedings, which are largely set forth in the opinion accompanying this summary order, and to which we refer only as necessary to explain our decision to affirm. We accept all factual allegations in the complaint as true. *K.W. on behalf of K.A. v. City of New York*, 177 F.4th 127, 141 (2d Cir. 2026).

Asinga was a world-class high school track and field athlete who was banned from his sport when he tested positive for a prohibited substance, cardarine. He unknowingly ingested the cardarine when he consumed Gatorade Recovery Gummies (the "gummies") that Defendant-Appellee Gatorade gave to him at an award ceremony it hosted for top high school athletes. Although the

3

gummies displayed an NSF "Certified for Sport" logo,[2] Asinga's opened bottle of the gummies tested positive for cardarine. Asinga then reached out to Gatorade to obtain a sealed bottle from the same lot in order to clear his name. But it turned out the gummies had been discontinued months prior because the gummies had never in fact been tested as advertised. Gatorade failed to provide a bottle from the same lot but instead offered a bottle from the same batch,[3] which tested negative for cardarine. As a result, Asinga (1) lost his scholarship to Texas A&M University, (2) was banned from competition for four years, (3) was stripped of his world records, and (4) lost the opportunity to enter into endorsement contracts.

---

[2] The National Sanitation Foundation (NSF) is a public health nonprofit organization that tests and certifies consumer products. NSF, *Who is NSF?* (Oct. 30, 2012), https://www.nsf.org/knowledge-library/who-is-nsf-international. The "Certified for Sport" logo signifies that a product has been tested for—and does not contain—"any of 290 substances banned by major athletic organizations." App'x 16–17 (¶¶ 56–59).

[3] A "lot" is a subset of a batch "that is uniform and that is intended to meet specifications for identity, purity, strength, and composition; or, in the case of a dietary supplement produced by continuous process, a specific identified amount produced in a specified unit of time or quantity in a manner that is uniform and that is intended to meet specifications for identity, purity, strength, and composition." 21 CFR § 111.3. Asinga therefore alleges that, by definition, a bottle from the same batch but a different lot was not subject to identical conditions that caused the first bottle to be contaminated.

4

## I. Standard of Review and Choice of Law

We review *de novo* the district court's dismissal of Asinga's claims, as well as its legal conclusions and choice of law. *Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023) (dismissal of claims); *City of Pontiac Gen. Employees' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 173 (2d Cir. 2011) (legal conclusions); *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 331 (2d Cir. 2005) (choice of law). We decide Asinga's claims under New York law to the extent that no conflict is asserted.

## II. Tortious Interference with Contract

A plaintiff asserting a tortious interference with contract claim must allege: (1) the existence of a valid contract, (2) defendant's knowledge of that contract, (3) defendant's intentional procuring of the breach of that contract, and (4) damages. *Burrowes v. Combs*, 808 N.Y.S.2d 50, 53 (1st Dep't 2006); *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006).

Asinga alleges that Gatorade interfered with two contracts: his athletic scholarship from Texas A&M University and his competition agreement with World Athletics. According to Asinga, he was required under contract "to avoid willingly ingesting banned substances" and to abide by the World Athletics Anti-Doping Rules. App'x 26, 31 (¶¶ 117, 150). Asinga does not allege that Gatorade

5

interfered by "intentionally" giving him the gummies; the interference was in "intentionally" failing to provide a sealed bottle to prove his innocence.

But Asinga requested the sealed bottle to prove that he had not breached a contract. Likewise, the entire thrust of Asinga's other claims is based on his allegations that he did not, in fact, "willingly" ingest a banned substance in breach of contract. Tortious interference with contract requires, at a minimum, an "actual breach of [a] contract," *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996). Asinga's claim is based on Gatorade's refusal to help him show that there had been none. In doing so, Gatorade is also only alleged to have interfered with the adjudicatory process that followed the breach of which Asinga was accused, not to have intentionally caused it. *See N. Star Contracting Corp. v. MTA Capital Const. Co.*, 993 N.Y.S.2d 11, 16 (1st Dep't 2014) (dismissing tortious interference claim where defendant's alleged conduct occurred *after* alleged breach); *Mr. W Fireworks, Inc. v. NRZ Inv. Grp., LLC*, 677 S.W.3d 11, 26 (Tex. App. 2023) ("In evaluating a claim for tortious interference with a contract, a threshold question is whether the contract itself was subject to the alleged interference." (citation omitted)).

6

Asinga asserts that Texas law should apply and materially differs from New York law on this claim. Under Texas law, "the elements of tortious interference are: "(1) a contract subject to interference; (2) a willful and intentional act of interference (3) that was a proximate cause of the plaintiff's damages; and (4) actual damage." *Cuba v. Pylant*, 814 F.3d 701, 717 (5th Cir. 2016). On first review, New York and Texas law appear to differ in a pivotal way: whether Gatorade caused Asinga's "breach" or whether it caused his "damages." However, Texas law also requires that Gatorade "have intended to induce a breach." *Id.* Since Gatorade's alleged conduct occurred after the breach, the difference between New York and Texas law does not impact the survival of Asinga's claim. *See also Burrowes*, 808 N.Y.S.2d at 53 ("[A] plaintiff must allege that the contract would not have been breached 'but for' the defendant's conduct." (citation omitted)).[4]

## III. TDTPA

The TDTPA protects consumers from "false, misleading, or deceptive acts or practices," including "causing confusion or misunderstanding as to

---

[4] Because Asinga failed to allege that Gatorade's conduct caused the breach, we need not evaluate the district court's holdings (1) that Asinga failed to allege that Gatorade's conduct was willful and intentional, and (2) that the terms of the alleged contracts were impermissibly vague.

the . . . approval, or certification of goods or services" or "representing that goods or services are of a particular standard, quality, or grade." Tex. Bus. & Com. Code § 17.46. To bring a TDTPA claim, "a plaintiff must be a consumer." *Lukasik v. San Antonio Blue Haven Pools, Inc.*, 21 S.W.3d 394, 400 (Tex. App. 2000). A consumer is one who "seek[s] or acquire[s] goods or services by purchase or lease." *Bohls v. Oakes*, 75 S.W.3d 473, 479 (Tex. App. 2002). It is well established that recipients of gifts are not consumers under the TDTPA. *March v. Thiery*, 729 S.W.2d 889, 896 (Tex. App. 1987); *see also Brashear v. Panini Am., Inc.*, No. 05-22-01338-CV, 2023 WL 4540270, at *14 (Tex. App. July 14, 2023) ("[O]ne who acquired a card by gift is not a consumer under the DTPA"); *Smith v. Estate of Branch*, No. 05-90-00941-CV, 1991 WL 219469, at *13 (Tex. App. Oct. 11, 1991) (same).

Asinga concedes that he was "gifted" the gummies and that they were "freebies." App'x 9, 15–18, 22, 39 (¶¶ 7, 51–52, 54, 60–61, 64, 90, 193). *See Brashear*, 2023 WL 4540270, at *14 (individuals who received "freebies" from defendants are not consumers). He alleges, however, that a transaction occurred because Gatorade was "motivat[ed]" to give Asinga the gummies "to generate marketing buzz by associating Issam's name, image, and likeness to its products"

8

and that "Pepsi/Gatorade used the 'gifts' to encourage Issam and the other young athletes to be loyal to Gatorade's brand, and to turn them into 'walking marketing machines for Gatorade.'" Appellant Br. at 46. This argument fails because "motivation" does not create a contractual obligation, *id.*, nor did encouragement for Asinga to post about the gummies require him to do so, *Hall v. Bean*, 582 S.W.2d 263 (Tex. Civ. App. 1979) (winner of boat race conducted to "advertise [a] marina" was not a consumer because "no valuable consideration passed between plaintiffs and defendant"), *Rutherford v. Whataburger, Inc.*, 601 S.W.2d 441, 444 (Tex. Civ. App. 1980), *writ refused NRE* (Oct. 1, 1980) (contest winner was not a consumer because "he did not purchase nor seek to purchase the contest prize"). Since he does not allege a commercial transaction with a bargained-for exchange, Asinga is not a consumer who has standing under the TDTPA.

## IV. Intentional Infliction of Emotional Distress

To adequately plead IIED in New York, Plaintiff must show "(1) extreme and outrageous conduct; (2) the intent to cause, or the disregard of a substantial likelihood of causing, severe emotional distress; (3) causation; and (4) severe emotional distress." *Zuckerbrot v. Lande*, 167 N.Y.S.3d 313, 337 (N.Y. Sup. Ct. N.Y.

9

Cnty. 2022) (quoting *Klein v. Metro. Child Services, Inc.*, 954 N.Y.S.2d 559, 562 (2d Dep't 2012)).

An IIED defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Chanko v. ABC, Inc.*, 27 N.Y.3d 46, 57 (2016) (quoting *Murphy v American Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983)). This "exceedingly high" standard makes this element "susceptible to a determination as a matter of law." *Chanko*, 27 N.Y.3d at 57. What constitutes "extreme and outrageous" conduct is case-specific, but relevant factors include "whether a defendant: has abused a power or position of dominance; emotionally harmed a plaintiff known by the defendant to be especially vulnerable; and repeats or continues undesirable acts, especially when the plaintiff cannot avoid the acts." *Brown v. Riverside Church in the City of N.Y.*, 216 N.Y.S.3d 144, 149–50 (1st Dep't 2024) (quoting Dan B. Dobbs et al<u>., Law of Torts</u> § 386 (2d ed 2011)).

Asinga argues that Gatorade engaged in "intolerable corporate conduct" by "refusing to provide a sealed supplement bottle from the correct lot" while "misrepresent[ing] that no such sealed bottle existed over the course of seven

10

months."  Appellant Br. at 55.  In light of the numerous cases in which more "atrocious" conduct fell short,[5] Gatorade's alleged conduct was not "so outrageous in character, and so extreme in degree" as to qualify as intentional infliction of emotional distress.  *Chanko*, 27 N.Y.3d at 56–57.

In any event, Asinga does not dispute the district court's conclusion that Asinga failed to allege that Gatorade acted with the intent to cause him severe emotional distress.  Conceding an element, Asinga's IIED claim cannot survive. *Loreley Fin. (Jersey) No. 4 Ltd. v. UBS Ltd.*, 978 N.Y.S.2d 615, 620 (N.Y. Sup. Ct. N.Y. Cnty. 2013), *aff'd in part, appeal dismissed in part*, 998 N.Y.S.2d 172 (2014) ([S]eparate elements . . . each must be adequately pled with particularity to survive a motion to dismiss.").

## CONCLUSION

We have considered Asinga's remaining arguments and conclude they are without merit.  For the foregoing reasons, the judgment of the District Court is **AFFIRMED** in part with respect to the claims discussed herein.  For the

---

[5] *See, e.g.*, *Herlihy v. The Metropolitan Museum of Art*, 633 N.Y.S.2d 106, 114 (1st Dep't 1995) (false charge of sexual harassment did not satisfy extreme and outrageous element); *Foley v. Mobil Chemical Co.*, 626 N.Y.S.2d 906, 908 (4th Dep't 1995) (sexual harassment constituted "inappropriate" behavior but not extreme and outrageous conduct); *La Duke v. Lyons*, 673 N.Y.S.2d 240, 244 (3d Dep't 1998) (false charges of illegal conduct not sufficient).

reasons set forth in the opinion accompanying this order, decision as to the

remaining claims on appeal (counts one, two, and three of the complaint)

is **RESERVED.**

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court